**CHAMBER OF COMMERCE OF THE UNITED STATES, et al., Appellants,**

v.

**Robert B. REICH, Secretary, United States Department of Labor, Appellee.**

No. 95–5242.

United States Court of Appeals, District of Columbia Circuit.

May 10, 1996.

Before: EDWARDS, Chief Judge, WALD, SILBERMAN, BUCKLEY, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS, and TATEL, Circuit Judges.

ON SUGGESTION FOR REHEARING IN BANC

*ORDER*

PER CURIAM.

Appellee's Suggestion for Rehearing *In Banc* and the response thereto have been circulated to the full court. The taking of a vote was requested. Thereafter, a majority of the judges of the court in regular, active service did not vote in favor of the suggestion. Upon consideration of the foregoing, it is

**ORDERED,** by the Court *in banc,* that the suggestion is denied.

Circuit Judges WALD and TATEL dissent from the denial of rehearing *in banc* and file statements.

WALD, Circuit Judge, dissenting from denial of petition for rehearing in banc:

I would grant a rehearing *in banc* in this case. The panel's supplemental opinion on rehearing performs a useful service by making clear the thrust of its ruling that the NLRA bars only those government actions "directed at collective bargaining," not every action which may "affect" bargaining. It thereby establishes some limits on its view of the reach of NLRA *Machinists* preemption doctrine, which is the linchpin of the panel opinion's rejection of the President's Executive Order. However, my concerns as to both the appropriate rubric for analyzing this case and the result reached by the majority continue to a sufficient degree that I believe an *in banc* hearing is warranted.

First, I am not convinced that preemption analysis is the appropriate analytic framework for assessing the lawfulness of the Executive Order. Preemption doctrine, which rests on the Supremacy Clause, is intended to ensure that state action does not "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941). *Machinists* preemption, the strand of NLRA preemption relied upon by the panel, applies this basic principle to prohibit state regulation of economic self-help weapons, on the

---

grounds that the NLRA intends that employers and employees have unfettered control over these tools during the collective bargaining process. *Machinists Lodge 76, v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976). As with all preemption doctrine, the *Machinists* rule has consistently been applied to *state* efforts to restrict the use of economic weapons in the collective bargaining process. *See, e.g., New York Telephone Co. v. New York State Dep't of Labor,* 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979); *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986). The panel opinion, however, applies the same test to *federal* laws that may affect the way in which employers or employees can exercise their bargaining weapons. *See Chamber of Commerce v. Reich,* 74 F.3d 1322, 1334 (D.C.Cir.1996). I have doubts about the appropriateness of the analogy.

In support of their reliance on preemption doctrine, the panel cites as primary authority *NLRB v. Insurance Agents' Int'l Union,* 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960). *Insurance Agents* presented the question of whether the Board was authorized to find that a union had unlawfully refused to bargain, where it utilized work slowdowns and other on-the-job conduct designed to interfere with an employer's business during the course of collective bargaining negotiations. The Court ruled that the Board had no such power, finding that the NLRA did not authorize the Board to control the substantive outcome of collective bargaining by interfering with the parties' resort to economic weapons that the Act intended to be unregulated. *Id.* at 490, 80 S.Ct. at 427–28. *Insurance Agents,* then, turned on the scope of the Board's authority under the NLRA, not on whether Congress could enact federal statutes other than the NLRA which restrict the use of economic weapons in labor disputes. That, I suspect, is a different question altogether.[1]

Second, if, as I think plausible, "preemption doctrine" may not apply to other federal laws which might affect the balance of power in the collective bargaining process, the real question for the court is where the jurisdictional line between the NLRA and the Procurement Act should be drawn.[2] That is, does the Procurement Act, properly construed, permit the President to restrict the use of permanent striker replacements by employers who choose to contract with the government, even though the NLRA generally reserves control of economic self-help weapons to the bargaining parties? I am not confident of the answer, but I believe the question important enough to be addressed directly by our court. The issue has heretofore arisen in only a few other contexts, none of which provide clear guidance. For example, courts have had to draw proper boundaries between the NLRA and federal antitrust laws, as well as between the Act and bankruptcy statutes. *See* Patrick Hardin, The Developing Labor Law 1729–71 (1992); *see also Brown v. Pro Football, Inc.,* 50 F.3d 1041 (D.C.Cir.), *cert. granted,* —— U.S. ——, 116 S.Ct. 593, 133 L.Ed.2d 513 (1995). Similar cases have arisen involving conflicts between RICO and the NLRA. *See, e.g., United States v. Boffa,* 688 F.2d 919 (3d Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494, 460 U.S. 1028, 103 S.Ct. 1280,

---

**1.** The difference between the two analyses is not just academic. NLRA preemption doctrine imposes a rigid bar against any state regulation of economic weapons; if a state statute does regulate the use of these economic tools, it is preempted unless the state is acting in its proprietary capacity. Federal regulation of these weapons, by contrast, is permitted if authorized by federal statute. Although a federal agency (or the President) must convince the court that its construction of the relevant statute is correct, restrictions on these economic tools pursuant to statutes other than the NLRA are not presumptively impermissible. The judicial roadblock to upholding any federal action, then, may be much lower if we look at the problem as one of two potentially conflicting federal statutes, rather than a federal/state preemption analysis.

**2.** To be fair, parts of the panel opinion do appear to analyze the lawfulness of the Executive Order in this manner. *See, e.g., Chamber of Commerce,* 74 F.3d at 1333 (discussing how to construe boundaries of NLRA and Procurement Act). But the panel's holding rests squarely on preemption doctrine, not statutory construction.

75 L.Ed.2d 501 (1983); *cf. Hubbard v. United Airlines,* 927 F.2d 1094 (9th Cir.1991) (examining conflicts between Railway Labor Act and RICO). In resolving this issue, courts have considered a range of factors, including legislative intent and the overarching policy goals of the relevant regulatory schemes.

In only a very few cases have the courts attempted to reconcile the potential conflicts between the NLRA and the Procurement Act. In *AFL–CIO v. Kahn,* this court—not citing preemption doctrine at all—ruled that the NLRA constrained the President's procurement authority only if its exercise "subvert[s] the integrity of [the collective bargaining] process." 618 F.2d 784, 796 (D.C.Cir.) (in banc), *cert. denied,* 443 U.S. 915, 99 S.Ct. 3107, 61 L.Ed.2d 879 (1979). The Third Circuit's decision in *Contractors Association of Eastern Pennsylvania v. Secretary of Labor* goes even further, holding that "[n]othing in the National Labor Relations Act purports to place any limitation upon the contracting power of the federal government." 442 F.2d 159, 174 (3d Cir.), *cert. denied,* 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 95 (1971). Other theories have been advanced by the parties as to where the line between the NLRA and the Procurement Act lies. In its brief here, the government claimed that the NLRA places no restrictions on the President's authority when he is acting in a proprietary capacity, suggesting that any inconsistencies in the two statutes must be resolved in favor of the Procurement Act, since it was enacted later in time than the NLRA; the panel, in retort, dismissed this argument as violating the rule against "repeals by implication." Appellants, on the other hand, argued that the NLRA completely insulates the *process* of collective bargaining, even from government action pursuant to another federal statute; they distinguish *Kahn* on the ground that the government may act to influence only the *substantive* terms of a collective bargaining agreement, not the process. The panel offered yet another theory, finding that the NLRA may allow the President to adopt procurement policies which incidentally affect the terms of bargaining if those actions are aimed at all government contractors, rather than intended to alter the bargaining process itself by shifting the balance of power between labor and management.

To be candid, I am not prepared to say with confidence which of these constructions, if any, is the right one. But I do know the issue merits close scrutiny—I believe by the entire court. The panel's decision to invalidate the Executive Order at stake here has significant implications for federal procurement policy and to my mind, cannot be easily reconciled with this court's *in banc* holding in *Kahn.* The ruling also affects the lives and jobs of the millions of American workers employed by the federal government—by the majority's calculations, over one-fifth of the nation's labor force. To ensure that we have given adequate attention to an issue with such potentially far-reaching consequences and to clarify our circuit precedent, I would grant the suggestion for rehearing *in banc.*

TATEL, Circuit Judge, dissenting from denial of petition for rehearing in banc:

While the result the panel reaches may well be correct, I share Judge Wald's view that this case raises questions of exceptional importance worthy of *in banc* consideration: Should we use the preemption doctrine to determine whether an Executive Order setting procurement policy violates the National Labor Relations Act, an approach we did not employ in *AFL–CIO v. Kahn,* 618 F.2d 784 (D.C.Cir.) (in banc), *cert. denied,* 443 U.S. 915, 99 S.Ct. 3107, 61 L.Ed.2d 879 (1979); and, if preemption analysis is appropriate, how in light of *Building & Construction Trades Council v. Associated Builders & Contractors of Massachusetts/Rhode Island,* 507 U.S. 218, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993), do we determine whether the government has crossed the line from acting as a "proprietor" purchasing goods and services to acting as a "regulator" of activities preempted by the NLRA? The answers to these questions implicate not only the President's power to set federal procurement policy—which, as the panel points out, directly affects 6.5% of our gross domestic product and a substantial portion of the nation's workforce—but also the President's ability to

act in other fields without running afoul of the NLRA.